Number 20-2054, Eastern Arkansas, Linda Rapp et al. v. Network of Community Options. I don't have counsel here. Your Honor, Tim Steadman on behalf of the appellants. All right. Now you're on my screen. How about Mr. Wakefield? Your Honor, this is Adam Franks on behalf of the appellee NCO here in Mr. Wakefield's stead. Okay, very good. I have you. Mr. Steadman? Thank you, Your Honor, and may it please the court. I represent Linda Rapp, Craig Shumway, and Karen Shumway. This is a Fair Labor Standards Act case. Ms. Rapp and the Shumways were direct support professionals for NCO, and they were charged by NCO with caring for people with severe disabilities who lived in their home. Rapp cared for her adult son, and the Shumways cared for a non-relative who they actually met through Mr. Shumway's work with NCO. NCO made clear that even though Rapp and the Shumways were responsible for providing 24-7 care, they would only be paid for 40 hours a week. The district court granted NCO's motion for summary judgment, and we asked this court to reverse. The district court's decision is flawed because the district court resolved disputed facts and generally construed the evidence in the light least favorable to the Rapp and the Shumways. Counsel, before you get to that, I want to just tell you what my problem is with your position, which is there's a requirement by this employer that the time is recorded. And here we have no time that is recorded, and then two or three years later, you're seeking overtime. Isn't there a problem just right off the bat, a threshold problem, that there is no request for overtime, no scheduling, no recording of the overtime hours? No, Your Honor. First, the timekeeping policy itself doesn't expressly direct the employees to record all their hours worked. Rather, it says do not work more than your scheduled hours without prior permission from your direct supervisor. The company is not liable for hours worked without such authorization. And the testimony from the employees was that the discussion with NCO was that they would only be paid for 40 hours per week, and that's all they could record. That's what was considered work. Anything else was voluntary, and that's essentially asking the employees to up front waive their rights under the FLSA. Well, I'm not sure about that. So say the employees record it and want 50 hours or 55 hours. Then the employer is given options if it's done contemporaneously, right? Then the employer can come back and say, okay, you're fired because you're not allowed to have more hours than that, and we're going to find somebody else to do it. Or they could say, well, we'll get somebody else to work the night shift who's cheaper, who we don't have to pay overtime to. But by waiting till two or three years later, you've deprived the employer of the options that they had in terms of dealing with this particular request. Respectfully, Your Honor, the statute provides the employer with only the option to pay for all of the hours worked, and as soon as NCO told them that they'd only be paid for 40 hours per week, there's where the FLSA violation comes in. Counsel, I thought they had timesheets and they filled them out, and when they filled out more than 40, they got paid for it. Am I wrong? Your Honor, on the rare occasion where they recorded more hours. I don't care whether it's rare or not. Is that factually accurate? Somewhat, Your Honor. However, the testimony from the employees was that they asked about pay for extra hours. I understand that. Wait a minute. Sure, they asked, and I understand that. I read the briefs. I also got out of the briefs that there were timesheets, and they filled them out, and occasionally they would fill out more than 40 hours, and they'd then be paid for that by a timesheet review process that paid salaries accordingly. Yes, Your Honor. That's Judge Strauss' problem. Go ahead. If they had written down 24-7, I'm sure they wouldn't have been paid 24-7, but the employer would have had an option to know what their legal position might be and could decide whether to fire them or negotiate or whatever. Or they could have paid, just to add to that, they could have paid for the 24-7, but then the next pay period terminated the employees, saying we paid our legal obligation, but we don't want to continue paying them for 24 hours' worth of work. Yes, Your Honor. However, the employer demanded the 24-7 work. The employees informed them that they were working that time. The policy essentially told the employees that they wouldn't be paid for that time if they recorded it. With regard to the rare occasion where a few extra hours were added, there were many times where that was not paid on a time-and-a-half basis. There was simply no legal basis for the— That the employee should bring to the employer's attention. Your Honor, there was testimony where this was brought to the employer's attention on— The point you just made, they weren't paid for time-and-a-half. Was that ever—I saw nothing in the brief saying that was ever in the summary judgment record. You paid me for the 45 hours, I claim, but you didn't pay me time-and-a-half for the five. Yes, Your Honor, that was part of the entire lawsuit. Tell me where in the summary judgment record I will find that there was specific evidence of that. Your Honor, it's not necessarily in the summary judgment record. It is in the complaint. The summary judgment paper is focused entirely on— We're past the complaint, counsel. We're going on a summary judgment record. Yes, Your Honor, and the summary judgment focused entirely on whether the raps and the shumways were entitled to pay for all of the hours they were required to be on duty. Under the statute, the employer and not the employees are charged with maintaining records. And if the employer fails, even if it's because of the employer's good-faith effort, then the employee has a relaxed burden of proof. Is there a case that says that you can have a situation where two to three years later you come back and say, Well, actually, I never recorded these hours, but you owe me $10,000 or $20,000 that you didn't pay me? Because I don't see any cases like that. And what I'm worried about is this is creating a perverse incentive under the statute, which is you can come in, you can keep your job, you can work all those hours for a number of years, and then you can come back and demand an exorbitant payment at the end that the employer knows nothing about. Your Honor, I disagree. First, the statute charges the employer with complying with the law. I believe the Anderson versus Mount Clemens Pottery case from the U.S. Supreme Court dealt with time going back years and years where the employer had a good-faith error about whether it was even covered by the law and whether the employees would have to be paid. The incentive requiring the employees to know the law and to demand their legal rights under the law and use that language actually creates an incentive where employers simply won't need to comply with the law. If an employer can avoid liability by saying, We know we only told you that we would pay you for 40 hours. Our policy says don't work beyond that, and we are not liable for any work that you perform without authorization. When you have employees repeatedly going to their supervisor begging for coverage so they can take vacations and do additional work, and the response from the company is there's not money in the budget. If you need somebody to come help, you need to pay somebody to come help. It is simply not the employee's responsibility to demand that the employer comply with the law. It is the employer's job to comply with the law and know what the law is under the statute. The law doesn't place the burden on the employee.  And the case demonstrates this. We're at trial. One of the workers testified. No one ever expected any kind of compensation. These were people who were volunteering for a church like organization. I guess at this point, we can all just call it a cult working in commercial businesses without cost compensation. And the employee said the thought is totally vexing to my soul. It would defeat my whole purpose. But despite... Let me go on to what the other thing that's bothering me is. And that is why this case is not controlled by the provision in 29 CFR section 785.23. That, quote, any reasonable agreement of the parties which takes into consideration all the pertinent facts will be accepted when the employee resides with the employer or, in this case, the employee's client. Your Honor, because that regulation also states that when the employee has... That applies when the employee has complete freedom from all duties and may leave the premises for purposes of his own. And the testimony was pretty clear that none of these people could leave their home and engage in activities on the purposes of their own. Wait, wait, wait. That's voluntary. That's by their choice. No, Your Honor. That's why it's different. This family situation is different than where an oil driller stays in the employer's shack in the field at night. So are you saying that the reg does not apply in this situation? Yes, Your Honor. And what case would support that? Well, the plain language of the regulation that says the language I'm quoting is when the employee has complete freedom from all duties but he may leave the premises for purposes of his own. That regulation wouldn't control here where there's testimony that the employee has to be home by 11 if they went out because they needed to care for Josh. And when Linda Rapp testified that NCO told her she'd have to pay someone to come in to help for Christian if she couldn't be there. These individuals required 24-7 care on behalf of NCO. And so that that regulation does not allow that when they're required to do basically be companions 24-7. That regulation would not allow the employer to come up with an agreement for less than that time. Look, could I ask one additional question? So I just want to ask about the spreadsheet. The spreadsheet was prepared by counsel. It's not sworn. It's not. It's not. In fact, the employees said, you know, didn't didn't have any hand in preparing it. Why, even aside from the recording at the time they were employed, why is the spreadsheet created by counsel sufficient to create a genuine issue of material fact on the number of hours these employees worked? The spreadsheet does very little other than just calculate the hours that they weren't paid for, less what the employees testified where they they did leave because they had alternate coverage or the individual was in somebody else's hand. Their testimony creates the genuine issue of material fact. Very good. Mr. Franks. Thank you, Your Honor. And may it please the court. I'm Adam Franks here today on behalf of Network of Community Options Incorporated. There are a couple things lurking in the background that I would like to touch on before we get to the legal issues. The clients of NCO in this case are adults with developmental disabilities. And this waiver services that are being provided by the appellants are part of a approved plan of care that is required under the Medicaid regs, Medicaid being the source of funding for these services. The plan is required to establish the scope of the services being provided to these individuals with the developmental disabilities. Your honors are absolutely correct that this situation is sort of a unique species unto itself where we have adults with developmental disabilities. Mr. Collins and Mr. Rapp, who have a familial relationship with the appellants in Ms. Rapp's case, Christian is her biological son. In the case of the Shumways, Joshua Collins is the ward of Karen Shumway's mother who lives in Florida. And in pursuit of providing services to these individuals with developmental disabilities, the Shumways and Ms. Rapp participated in the planning of the individual's care, signed off on it, and were aware of what the program for services was going. The issues in this case really can be boiled down to two. The points on appeal are different iterations of the same issue. The first is, does living at home with a member of your family constitute work within the meaning of the FLSA? If the answer to that question that this court reaches is no, the district court must be affirmed. The district court found that the appellant's personal time spent in their personal homes with members of their family was not work within the meaning of the act. And the regulations cited and discussed are controlling. We have searched high and low for a case law that comes close to discussing this unique situation. We were mostly unsuccessful. However, there is some guidance provided in the Holloway case, although it is more in terms of what the lack of proof that was presented at the summary judgment stage, which is my next issue that I'll get to in just a moment. But I believe Judge Strauss is correct that what the appellants are asking this court to approve or condone is a perverse incentive to come back after the fact where there is no evidence of notice to an employer that employees are working 24 hours a day, 7 days a week, 365 days a year in their home with their family members. These employees are given a great deal of latitude to perform the plan of care, to work on the client's goals and objectives for 40 hours per week. The statements about funding not being in the budget is a bit of an oversimplification. These are pre-approved plans based on the availability of Medicaid dollars allocated for these individuals with developmental disabilities. Let me ask you this. That's the one argument that opposing counsel made that I think has some legs here, which is if an employee is repeatedly told you can't work more than 40 hours, there's no funding for it, then to come back and say, well, you never recorded it. I know that's the argument I was making on the other side. You never recorded it. That seems like it would have been futile. So we use futility in other circumstances. It would have been futile because there wasn't a budget for it. What's your response to it? Your Honor, I think the record that is before the court shows, and I believe as Judge Loken pointed out, there were instances where overtime was recorded and overtime was paid. And there were allegations in the complaint to that effect, that there were overtime hours worked and recorded but improperly paid. However, the plaintiffs, when facing summary judgment for all hours worked off the clock or not reflected on the timesheets, did not present any of that evidence to the district court. That is not in the summary judgment record. It is an issue that has been sort of lurking under the surface in this appeal, and the first time it was raised was by the appellants in a footnote sort of near the end of their reply brief. And as the court knows, that is not the time or the place to raise that issue for the first time, and it was not preserved below. But that is the response. There were instances where overtime was recorded, overtime was paid. And there is no evidence, on the other hand, that there was any notice to NCO that these employees were working around the clock. So while there were some instances where overtime was recorded and paid, there was no notice whatsoever that these individuals would now come back and claim through a spreadsheet that their attorneys have tabulated that they should be paid for every minute. And I would say every waking minute, but they want to get paid for sleeping too. Well, just to follow up on that, so opposing counsel now says that the spreadsheet really wasn't evidence. It's a summary to show how much they were entitled to, but it's really not the evidence. But you're right. I mean, you know, to the extent you're relying on deposition testimonials, we were with the special needs adult, you know, a family member 24-7, and that's what we think we should get paid. So the equivalent is absolutely right. Why is that not enough to survive summary judgment? I think you were getting there. Your Honor, I think that is a legal argument in conclusion that it sort of is a great segue from issue one is sleeping in your bed at home work under the FLSA. And then by the same token, what proof was presented to the district court to establish, A, that work was done and B, how much work was done? There was no evidence of either of those things. There was nothing presented to the district court in the summary judgment record that was admissible that established, A, that work was being done for the benefit of NCO and B, how much of that work was being done? There was no testimony that on Wednesday I worked with Christian or Josh from 8 p.m. to 10 p.m. There was nothing like that. There was speculation about because I was home, those are the hours I'm claiming in this lawsuit. The appellants had no part in the tabulation of these spreadsheets. They testified that they could not provide any testimony about how they were tabulated, how they were prepared, and what even the spreadsheets had reflected. In some cases, the appellants had not seen the spreadsheets until the day before or the day of their deposition. And that sort of speculative and testimony and conjecture is insufficient by itself to ward off summary judgment. That law is well established. And so I think the issue under the Holloway case is and why it controls here, it's I think as close as we can get under these unique facts. The employee in the Holloway, the Stratasys, was a technology technician of some sort who was on duty at home and would be called out to go to people's places of business to perform technology services. This case is distinguishable because the appellants stayed at home. They did not go to NCO's offices or other facilities that NCO had. And there's just no evidence that or meaningful explanation of the hours worked or what work was performed. This is all language directly from Holloway. The testimony they gave was vague. They could provide no specific days or hours worked or what the work was done on those days. And there was also no account for days that they claimed they were on duty, but they may not have done any actual work. And that is sort of the fundamental flaw with the plaintiff's or I'm sorry, excuse me, the appellant's legal theory. It's not so much a factual assertion as it is a legal theory is that if they are entitled to pay for every minute of every day, there is no account whatsoever for days where they perform no work. Council, let me ask you this. Is it your position that 29 CFR 785.23 does not apply because of the live at home aspect of this? Or rather that it applies, but the ordinarily sentence preamble doesn't apply because it isn't. These aren't there are different facts when it's when it's at when the when the employee is at the his work as working at his or her own home rather than at the employer's premises. Your Honor, I think it applies to the extent it addresses the private pursuits. And I think that is the key takeaway from that regulation is that private pursuits. I didn't understand. Yes, Your Honor. What does that mean? What does that mean? What what's a public? I mean, say, why does it apply? Your Honor, the language from the reg is the employee may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, etc. And that is what these employees can do. They just don't have to leave home once their designated shift ends. They are free to do whatever it is they do in their daily lives. It is not the business of NCO to delve into what the appellants do in their free time. But they are certainly able, able or presumably able to do whatever it is they would do if they held any other sort of job. If the appellants worked for some other employer and still were charged through their personal lives with providing care to these adults with developmental disabilities. Counsel, I don't understand the facts well enough. But I thought I thought the work plan was the 40 hours would end at 10 p.m. And now counsel says they were ordered to be available at least till 11 p.m. So when does this private pursuits thing kick in? Why don't we just disregard the order? My question is if we disregard the ordinarily and apply and the reg applies, then the provision in the reg that any reasonable agreement of the parties would apply. And then that makes a lot of sense. If that does apply, then was it satisfied by your client here? Your Honor, it was. And the the idea that the appellants were ordered to stay until 11 or some other time is not supported by the record. That is a mischaracterization of the deposition testimony. Well, I thought with I thought with regard with regard to Miss. I guess Rapp appendix at 67, her testimony at appendix page 67 seemed like enough to show a 40 hour agreement. I thought the testimony of Ms. Shumway was much less clear on that point. So where would where would we infer an agreement between NCO and Ms. Shumway that that this this 24 seven was really 40 hours? Your Honor, those are the plans of care required under the Medicaid regulations. Those are the plans of care that are in the record inside the appellants. Well, how is that? And how is that an agreement with NCO? NCO is the other party to the or is a party to the plan of care. NCO is the employer of the service providers, the DSP. Could I ask one question, Mr. Frank? Is it your position that your client was under no obligation to provide any means by which these people could record their extra time or their overtime? Your Honor, that is not our position. Our position, which is borne out by the record, is that there was the procedure for recording overtime. And in fact, it was recorded and paid in some instances. However, this under the Medicaid requirements, this plan of care is required to be reviewed, prepared and approved prior to the provision of services. And so that that is where we find ourselves with the idea of the agreement between NCO and its employees, the appellants in this case, and also the limitation of the 40 hours per week, because that is the Medicaid funding that is being provided for these individuals. Very good. Mr. Steadman, have any time for a moment? No, I'll give you no, but I'll give you two minutes. Thank you, Your Honor. And I don't think I need it. The key point with 785.23 is that even outside of their 40 hour schedule, these individuals were not free from all duties. If Linus Rapp, Karen Shumway or Craig Shumway had a late night hankering for some Taco Bell, they could not have leaved the home to go get it because they were required to be there. These individuals required... Give me the appendix, I assume you're referring to something in the plan of care. So give me the precise page where I can find this. Your Honor, the best testimony where you can find that is Karen Shumway's testimony. I want documents. I don't want testimony. People will say whatever their coach has to say in this kind of case. Well, Your Honor, there was no testimony on either point, but actually... Is it in the plan of care that they're required to be at home more than 40 hours a week? Your Honor, it's actually NCO's testimony at Joint Appendix 420 through 421. Miss, the representative was asked, the DSP is working and something occurs in the middle of night that requires their attention. They're expected to perform that work. If they're assigned to the client and they're there, yes, they are. Because otherwise, the client's left with no one to help them. Right. And that's against NCO's mission. And the individual agreed. And the plans of care actually do less than both. The both of these individuals are pervasive. And that's 154 and 114. What is that? That's the plans of care? Plans of care. 144, Christian requires assistance with all daily living tasks. He's not ambulatory and cannot move himself in a wheelchair. And with Josh... Josh's is at 154. I'm looking for the similar language. He's limited in his capacity for learning or obtaining skills. Therefore, it is necessary for him to receive assistance with all daily living skills by receiving the necessary prompting reminders, cue supervision, role modeling, and assistance with all of his daily living skills. All right. Thank you, Counsel. The case has been fully briefed and argued. It's complicated. We will take it under advisement. Thank you, Your Honor. Thank you, Your Honor.